**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| NATALIE CHANG, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 21-1821 (RC) |
| | : | | |
| v. | : | Re Document No.: | 25 |
| | : | | |
| REPUBLIC OF SOUTH SUDAN, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

<u>**MEMORANDUM OPINION**</u>

**GRANTING DEFENDANTS' MOTION TO DISMISS**

**I.  INTRODUCTION**

Plaintiffs Natalie Chang, Irene Scott, Jeana Graham, Jane Doe, Gian Libot, and Mary Roe (collectively, "Plaintiffs")[1] bring suit against Defendants the Republic of South Sudan and the South Sudan Ministry of Defence and Veteran Affairs (together, "South Sudan" or "Defendants") for injuries suffered due to a horrific attack perpetrated by South Sudanese armed forces in July 2016.  Defendants have filed a motion to dismiss Plaintiffs' complaint for lack of subject matter and personal jurisdiction, contending that South Sudan and its political subdivisions are immune to suit in the United States under the Foreign Sovereign Immunities Act ("FSIA").  For the reasons detailed below, the Court grants Defendants' motion to dismiss.

---

[1] Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), Plaintiff Rebecca Chol Nygundeng dismissed claims brought on behalf of herself and her three minor children against Defendants on January 23, 2023.  Not. of Voluntary Dismissal at 1, ECF No. 34.  The Court thus does not address claims specific to Nygundeng.

## II.  BACKGROUND

### A.  Factual Background[2]

On July 11, 2016, members of South Sudan's armed forces, including soldiers of the Sudan People's Liberation Army ("SPLA"), perpetrated a horrific assault on U.S. and international aid workers at a humanitarian aid compound in South Sudan called the Terrain Hotel.  Compl. ¶ 1, ECF No. 1.  At the time of the attack, Plaintiffs were employees of Internews, an American non-governmental organization based at the Terrain Hotel that ran international development programs in support of an independent media in South Sudan.  *Id.* ¶ 2.  Over the course of nearly five hours, Plaintiffs were terrorized and physically assaulted by the attackers.  *Id.* ¶¶ 4–5.  Natalie Chang, Irene Scott, Jeana Graham, Jane Doe, and Mary Roe were subjected to rape and other forms of sexual violence, in addition to being beaten and psychologically traumatized.  *Id.* ¶¶ 4, 49–92.  One of their colleagues, John Gatluak, was executed.  *Id.* ¶ 4.  Gian Libot, who was struck with the butt of a rifle by a soldier, witnessed Jane Doe's assault and John Gatluak's execution.  *Id.* ¶¶ 4, 98–103.  Although South Sudan evacuated Chang, Graham, Doe, and Libot from the compound several hours after the attack began, Scott, Roe, and others were left behind and not evacuated until the following morning.  *Id.* ¶¶ 5, 107.

Both South Sudan's Investigation Committee and the United Nations' Independent Special Investigation concluded that government soldiers had committed the attack.  *Id.* ¶¶ 108–12.  Further, an SPLA General Court Martial convicted ten "SPLA personnel" of—among other

---

[2] For purposes of their motion to dismiss, Defendants do not contest the "facts alleged with regard to the underlying events in South Sudan," though they "reserve their right to challenge [the alleged facts] should the case proceed on the merits."  Defs.' Mot. to Dismiss at 3 n.2, ECF No. 25-1.  Accordingly, in deciding this motion to dismiss, the Court recites the facts as alleged by Plaintiffs.

charges—murder, rape, and assault for the attack. *Id.* ¶¶ 7, 115. The court martial then found the South Sudan Ministry of Defence and Veterans Affairs civilly liable for the attack. *Id.* ¶¶ 3, 116. Though it awarded the owners of the Terrain Hotel $2.25 million in damages for the property damage and lost earnings, it awarded five of the victims of sexual assault and rape—including Chang, Scott, and Graham—only $4,000 each. *Id.* ¶¶ 117, 127. Plaintiffs have sought to appeal the damages portion of the judgment, but the Supreme Court of South Sudan has yet to hear the appeal because the case file has gone missing. *Id.* ¶¶ 119–20. Despite years of negotiation with the Government of South Sudan, and though South Sudan has paid the damages owed to the Terrain Hotel owners, South Sudan has not paid Plaintiffs any compensation. *Id.* ¶¶ 121–27.

### B. Procedural Background

Plaintiffs now seek to bring suit against Defendants in this Court and raise claims of assault, battery, intentional infliction of emotional distress, and negligent retention, training, and supervision. *Id.* ¶¶ 142–53, 159–62, 164–68. Chang, Scott, Graham, Doe, and Roe each seek $15 million for pain and suffering and $8 million in economic damages and lost earnings, or a greater amount to be proved at trial. *Id.* ¶¶ 170–74. Libot seeks $5 million for pain and suffering and $3 million in economic damages and lost earnings, or a greater amount to be proved at trial. *Id.* ¶ 175.

Plaintiffs claim that South Sudan has waived its sovereign immunity to suit under the FSIA. *Id.* ¶ 12. Specifically, according to Plaintiffs, Plaintiffs on March 22, 2021 sent a demand letter and draft complaint to Counsel Biong Pieng Kuol, Advocate General of South Sudan in the Ministry of Justice and "the chief negotiator for South Sudan in this case," via WhatsApp. *Id.* ¶ 128; Pls.' Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n") at 5, ECF No. 27. Counsel Kuol then

responded, "Okay, well received." Compl. ¶ 128. On April 6, 2021, Counsel Kuol "informed Plaintiffs' local counsel in South Sudan that the Plaintiffs should bring their claims so that the case can be resolved." *Id.* ¶ 11. Then, on June 26, 2021, "the Legal Adviser to Salva Kiir, the President of South Sudan, reiterated to Plaintiffs' local counsel that Plaintiffs should bring their claims." *Id.* On July 8, 2021, counsel for Plaintiffs sent copies of the Complaint and exhibits to Counsel Kuol via WhatsApp, stating:

> I look forward to continuing our dialogue so that we can reach a just and speedy resolution to this matter. Please confirm if you agree to service of documents, process, and correspondence via email. This has been a convenient means of communication for all parties so far, and we hope that it can continue.

Pls.' Opp'n at 6 (citation omitted). Counsel Kuol then responded, "Okay. The Minister will find out the matter because we have letters of request to the money with the Presidential Affairs Minister." *Id.* at 7 (citation omitted). On August 23, 2021, Plaintiffs purportedly served process on Counsel Kuol by email and provided a copy on WhatsApp. *Id.* Counsel Kuol replied, "Okay. Let me print out the documents and share it with the Minister." *Id.* (citation omitted).

Plaintiffs filed their Complaint in the instant matter on July 8, 2021. Compl. at 1. On November 5, 2021, following Defendants' failure to file an Answer or other response to Plaintiffs' Complaint, the Clerk of Court placed an entry of default on the docket. Defs.' Mot. to Set Aside Default at 1, ECF No. 22. Upon consideration of Defendants' unopposed motion to set aside the default, the Court vacated the entry of default and ordered Defendants to respond to Plaintiffs' Complaint by March 28, 2022. Minute Order of Jan. 27, 2022. Defendants did not timely respond to Plaintiffs' Complaint as directed, and the Court again permitted Defendants to respond by May 15, 2022. Minute Order of Apr. 19, 2022. Defendants then filed the instant motion to dismiss on May 11, 2022. Defs.' Mot. to Dismiss at 1.

### III.  LEGAL FRAMEWORK

#### A.  Foreign Sovereign Immunities Act

The FSIA "is the source of jurisdiction in federal court over claims against foreign states, their agencies, or their instrumentalities." *Hardy Expl. & Prod. (India), Inc. v. Gov't of India*, 219 F. Supp. 3d 50, 56 (D.D.C. 2016) (citing *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989)).  This statute "codifies the concept of foreign sovereign immunity, something which is 'a matter of grace and comity on the part of the United States, and not a restriction imposed by the Constitution.'" *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 392 (D.D.C. 2015) (quoting *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 140 (2014)).  As set out by the FSIA, "[a] foreign state is normally immune from the jurisdiction of federal and state courts, 28 U.S.C. § 1604, subject to a set of exceptions specified in §§ 1605 and 1607." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 488 (1983).  It is well-established that "[t]he FSIA begins with a presumption of immunity, which the plaintiff bears the initial burden to overcome by producing evidence that an exception applies, . . . and once shown, the sovereign bears the ultimate burden of persuasion to show the exception does not apply[.]" *Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 696 (D.C. Cir. 2022) (quoting *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1183 (D.C. Cir. 2013)).

Among other exceptions, the FSIA provides that a foreign state may waive its immunity "either explicitly or by implication." *Id.* at 690 (quoting 28 U.S.C. § 1605(a)(1)).  The exceptions set forth by the FSIA to foreign sovereign immunity "provide the only authority for a district court to assert subject matter jurisdiction over claims against a foreign state." *Roth*, 78 F. Supp. 3d at 393.  Thus, "[i]f no exception applies, the district court has no [subject matter] jurisdiction." *Id.* (citation omitted).  "Under the FSIA, 'subject matter jurisdiction plus service of

process equals personal jurisdiction.'" *Hardy*, 219 F. Supp. 3d at 56 (quoting *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1548 n.11 (D.C. Cir. 1987)).

### B. Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction, *see Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004), and must therefore address jurisdiction as a "threshold matter," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). "A court considering a Rule 12(b)(1) motion must assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting a plaintiff the benefit of all inferences that can be derived from the facts alleged." *McFadden v. Washington Metro. Area Transit Auth.*, 949 F. Supp. 2d 214, 219 (D.D.C. 2013) (quoting *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)) (cleaned up). Even so, "a '[p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than resolving a 12(b)(6) motion for failure to state a claim.'" *Turan Petroleum, Inc. v. Ministry of Oil & Gas of Kaz.*, 406 F. Supp. 3d 1, 8 (D.D.C. 2019), *aff'd*, No. 21-7023, 2022 WL 893011 (D.C. Cir. Mar. 25, 2022) (quoting *Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001)). In addition, a court may "undertake an independent investigation to assure itself of its own subject matter jurisdiction" and "consider facts developed in the record beyond the complaint." *CFA Inst. v. Andre*, 74 F. Supp. 3d 462, 465 (D.D.C. 2014) (quotation marks and citations omitted). "Under Rule 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Grell v. Trump*, 330 F. Supp. 3d 311, 316 (D.D.C. 2018) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

### C. Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

Pursuant to Federal Rule of Civil Procedure 12(b)(2), "a plaintiff bears the burden of 'alleg[ing] specific facts on which personal jurisdiction can be based; it cannot rely on conclusory allegations.'" *Fuentes-Fernandez & Co., PSC v. Caballero & Castellanos, PL*, 770 F. Supp. 2d 277, 280 (D.D.C. 2011) (quoting *Moore v. Motz*, 437 F. Supp. 2d 88, 90–91 (D.D.C. 2006)). A court "is not required to treat as true all of plaintiffs' allegations when determining whether personal jurisdiction exists." *Id.*

### IV. ANALYSIS

Because South Sudan has not waived its sovereign immunity, this Court lacks the requisite subject matter and personal jurisdiction to adjudicate this case. The statements alleged to have been made by two South Sudanese government officials, even when taken together with South Sudan's purported willingness to accept service through a special arrangement with Plaintiffs' counsel, do not rise to the level of being a clear and unambiguous explicit waiver of South Sudan's immunity to suit. Nor does this case fall within the three recognized forms of implied waiver of immunity. Thus, although the Court sympathizes with Plaintiffs and hopes that they will attain justice for the abuses they have suffered, the Court must dismiss this case for lack of subject matter and personal jurisdiction.

### A. Explicit Waiver of Sovereign Immunity

Plaintiffs claim that, by confirming receipt of Plaintiffs' draft Complaint—which alleged "that South Sudan had waived its immunity through its assumption of liability, pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(1)," Compl. ¶ 129—and inviting Plaintiffs to bring their claims, Defendants have waived their immunity to suit, *id.* ¶¶ 128–32. Plaintiffs allege primarily that South Sudan has "waived immunity expressly, knowingly, and

7

unambiguously" through its government officials' statements and subsequent actions, Pls.' Opp'n at 10, 15, but argue in the alternative that Defendants at least implicitly waived immunity and indicated South Sudan's amenability to suit, *id.* at 18–20.  In response, Defendants have moved to dismiss Plaintiffs' claims for lack of subject matter and personal jurisdiction, arguing that Defendants never explicitly or implicitly waived their immunity to suit.  Defs.' Mot. to Dismiss at 1–2.  According to Defendants, the government officials' statements that Plaintiffs cite in support of waiver constitute "no more than [Defendants'] acknowledgment of receipt," Defs.' Reply Supp. Mot. to Dismiss ("Defs.' Reply") at 4, ECF No. 29, and do not fall within any of the established forms of implied waiver, *id.* at 9–10.

Pursuant to the FSIA, "[a] foreign state shall not be immune from the jurisdiction of United States courts in any case . . . in which the foreign state has waived its immunity either explicitly or by implication."  28 U.S.C. § 1605(a)(1).  "Generally, 'explicit waivers of sovereign immunity are narrowly construed in favor of the sovereign and are not enlarged beyond what the language requires.'"  *Turan*, 406 F. Supp. 3d at 10 (quoting *World Wide Mins., Ltd. v. Republic of Kaz.*, 296 F.3d 1154, 1162 (D.C. Cir. 2002)) (cleaned up).  Accordingly, "[a] foreign sovereign will not be found to have waived its immunity unless it has *clearly and unambiguously* done so."  *World Wide Mins.*, 296 F.3d at 1162 (emphasis added); *Wye Oak*, 24 F.4th at 691; *see also Maritime Int'l Nominees Establishment v. Republic of Guinea*, 693 F.2d 1094, 1100 n.10 (D.C. Cir. 1982) (noting that Congress "contemplated" waivers of immunity of a "specific and explicit nature").  In other words, "[a]n express waiver under section 1605(a)(1) must give a '*clear, complete, unambiguous, and unmistakable*' manifestation of the sovereign's intent to waive its immunity."  *Aquamar, S.A. v. Del Monte Fresh Produce N.A., Inc.*, 179 F.3d 1279, 1292 (11th Cir. 1999) (citation omitted and emphasis added).  The "purpose" of the explicit

8

waiver requirement "is to preclude inadvertent, implied, or constructive waiver in cases where the intent of the foreign state is equivocal or ambiguous." *Cap. Ventures Int'l v. Republic of Argentina*, 552 F.3d 289, 293 (2d Cir. 2009) (quoting *Libra Bank Ltd. v. Banco Nacional de Costa Rica, S.A.*, 676 F.2d 47, 49 (2d Cir. 1982)).

The Court finds that the purported statements and actions by government officials cited by Plaintiffs here, whether considered on their own or together, do not constitute a "clear[] and unambiguous[]" explicit waiver of South Sudan's sovereign immunity to suit in this case. *World Wide Mins.*, 296 F.3d at 1162. Here, Plaintiffs rely on five events in arguing an explicit waiver of immunity: (1) Counsel Kuol's acknowledgement of receipt of a draft complaint claiming that South Sudan had waived its immunity through an assumption of liability, Compl. ¶¶ 128–29; (2) following Plaintiffs' transmission of a draft complaint to Counsel Kuol, Counsel Kuol and the Legal Adviser to the President of South Sudan's statements to Plaintiffs' local counsel that Plaintiffs should bring their claims, *id.* ¶¶ 130–31; (3) Counsel Kuol's purported agreement to a special arrangement for service of process, Pls.' Opp'n at 6–7;[3] (4) Counsel Kuol's two statements indicating that the "Minister" would be made aware of Plaintiffs' Complaint, *id.* at 7; and (5) Defendants' failure to "defend against the Complaint in the face of two deadlines," *id.* at 11. These statements and actions do not meet the stringent standard for an explicit waiver of sovereign immunity under the FSIA. Most of Counsel Kuol's statements merely acknowledged receipt of Plaintiffs' draft complaint, reflected a willingness to receive documents via email and

---

[3] Plaintiffs argue that Counsel Kuol's purported agreement to service, taken together with the other statements and actions listed, ought to indicate a waiver of South Sudan's sovereign immunity. *See* Pls.' Opp'n at 11. But by way of analogy, even "[w]aiving service of a summons does not waive any objection to personal jurisdiction or to venue" under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 4(d)(5); *see Mann v. Castiel*, 681 F.3d 368, 373 (D.C. Cir. 2012). It is thus doubtful that Counsel Kuol's purported agreement to service could waive jurisdictional defenses.

9

WhatsApp, or indicated that a government minister would learn about or be provided with Plaintiffs' Complaint. In none of these various statements and actions can the Court discern a "clear, complete, unambiguous, and unmistakable" intent to waive South Sudan's immunity. *Aquamar*, 179 F.3d at 1292. Counsel Kuol's acceptance of documents that may have contained claims about South Sudan's immunity does not equate to acceptance of those claims; indeed, at no point do his statements engage with the content of the documents. Nor do Defendants' delays in responding evince a clear waiver of immunity, particularly when Defendants attributed one of those delays to "difficulty retaining local counsel" and noted specifically their intent to invoke sovereign immunity. Defs.' Mot. to Set Aside Default at 3–4.

Plaintiffs' strongest argument is that, because Counsel Kuol and another government official orally told Plaintiffs' counsel that they should "bring their claims" or "bring their claims so that the case can be resolved," Defendants thereby waived their sovereign immunity. Compl. ¶ 11. In support, Plaintiffs cite a Report and Recommendation—that has yet to be adopted—in which a magistrate judge concluded that, through various statements made by its government officials, Iraq explicitly waived its sovereign immunity. Pls.' Opp'n at 13–14 & n.9 (citing *Mohammad Hilmi Nassif & Partners v. Republic of Iraq*, No. 17-cv-2193, 2021 WL 6841848, at *11 (D.D.C. July 29, 2021)). In *Mohammad Hilmi Nassif*, the plaintiffs sought enforcement of a Jordanian court's judgment against the Republic of Iraq and its Ministry of Industry and Minerals for breach of contract. 2021 WL 6841848, at *2–3. The magistrate judge concluded that the defendants had explicitly waived immunity because "on multiple occasions, five senior Iraqi government officials told Plaintiff that it could sue Defendants anywhere in the world and Defendants would not object and would have no defense to such suit." *Id.* at *7–8. Specifically, those government officials had made the following statements:

- "[Plaintiff] ha[s] the right to sue Iraq anywhere to enforce its rights under the [Export Commitment] Letter, whether in the Middle East, Europe or the United States."
- "[Plaintiff] may sue Iraq and the Ministry anywhere it wants—including in the ... United States . . . ."
- "Plaintiff ha[s] the right to sue Iraq on the Letter, [ ] it ha[s] the right to sue Iraq anywhere on this obligation[,] and [ ] Iraq would not object to being sued anywhere."
- "[T]here [is] no limitation in the Letter requiring [Plaintiff] to sue in Iraq.  In fact, . . . the Letter [is] a valid, unconditional obligation and [ ] it could be enforced against Iraq anywhere . . . ."
- "[Plaintiff] should sue Iraq and the Ministry in any country . . . ."
- "Iraq and the Ministry would have no defense to any such lawsuit by [Plaintiff]."
- "Iraq would not and could not dispute the lawsuit at all . . . ."

*Id.* at *8 (citations omitted).

Plaintiffs contend that "South Sudan's repeated oral waiver is squarely in line" with *Mohammad Hilmi Nassif*, particularly when "Iraq's statements referred generically to suits anywhere" whereas "South Sudan's oral statements were explicitly linked to this very case." Pls.' Opp'n at 13–14.  The Court does not opine as to whether it agrees with the Report and Recommendation's conclusions because, whether *Mohammad Hilmi Nassif* is correct or not, the statements at issue in that case can be distinguished from those here.  The Iraqi officials in *Mohammad Hilmi Nassif* not only told the plaintiffs that Iraq could be sued in the United States, but also added further that the contractual commitment could be enforced against Iraq and that Iraq "*would have no defense*" and "*would not and could not dispute the lawsuit* at all."  2021 WL 6841848, at *8 (emphasis added).  In this case, by contrast, even if taken as true that Counsel Kuol and a Legal Adviser to the President of South Sudan told Plaintiffs' counsel that Plaintiffs should bring their claims so that the case can be resolved,[4] those alleged statements give no

---

[4] Plaintiffs note that Defendants do not argue that Counsel Kuol and the President's Legal Advisor "lacked actual authority to make a binding waiver of immunity."  Pls.' Opp'n at 14.

11

indication as to *how* the claims would be resolved.  That is, unlike in *Mohammad Hilmi Nassif*, the government officials here did not state that South Sudan would have no defense against, and would not dispute, a lawsuit brought in the United States.  Indeed, their statements leave open the possibility of resolution through a sovereign immunity defense.  This ambiguity in the South Sudanese officials' alleged statements leads the Court to conclude that Defendants did not explicitly waive their sovereign immunity to suit.  *Cf. Wultz v. Bank of China Ltd.*, 32 F. Supp. 3d 486, 497 (S.D.N.Y. 2014) (concluding that Israel did not expressly waive an official's immunity "by encouraging Plaintiffs to bring the underlying lawsuits," committing to make the official available to testify, or agreeing to provide access to the official).

### B.  Implicit Waiver of Sovereign Immunity

In the alternative, Plaintiffs contend that, even if South Sudan did not explicitly waive immunity, it did so implicitly because "[t]he touchstone of implied waiver is that the foreign state must have 'at some point indicated its amenability to suit.'"  Pls.' Opp'n at 18 (quoting *Princz v. Fed. Republic of Germany*, 26 F.3d 1166, 1174 (D.C. Cir. 1994)).  According to Plaintiffs, "South Sudan's repeated instructions to bring the claims and its subsequent actions" reflected such amenability.  *Id.*

Although "[t]he FSIA does not specifically define what will constitute a waiver 'by implication,'" the D.C. Circuit "has 'followed the virtually unanimous precedent construing the implied waiver provision narrowly.'"  *Khochinsky v. Republic of Poland*, 1 F.4th 1, 8 (D.C. Cir. 2021) (quoting *Creighton Ltd. v. Gov't of Qatar*, 181 F.3d 118, 122 (D.C. Cir. 1999)).  Even

---

Defendants only mention briefly, in the context of their argument regarding ineffective service of process, that the Ministry of Justice "has jurisdiction over internal affairs only and no capacity for external relations."  Defs.' Reply at 11.  Given that the Court concludes that Defendants did not waive immunity, the Court does not need to address the question of whether the government officials at issue here had the authority necessary to waive South Sudan's sovereign immunity.

with respect to the implied waiver exception, "implicit in § 1605(a)(1) is the requirement that the foreign state have *intended* to waive its sovereign immunity." *Id.* (citation omitted and emphasis in original). Specifically, the D.C. Circuit has "found the requisite evidence of a foreign state's intent to qualify as an implied waiver of sovereign immunity" in only three scenarios:

> (i) the state's executing a contract containing a choice-of-law clause designating the laws of the United States as applicable; (ii) the state's filing a responsive pleading without asserting sovereign immunity; or (iii) the state's agreeing to submit a dispute to arbitration in the United States.

*Id.* at 8–9 (quoting *Ivanenko v. Yanukovich*, 995 F.3d 232, 239 (D.C. Cir. 2021)) (cleaned up).

As Plaintiffs acknowledge, the current circumstance does not fit into any of these three recognized forms of implied waiver. *See* Pls.' Opp'n at 18–19. Plaintiffs nevertheless assert that the government officials' statements and actions here should be deemed an implied waiver because they are "far more concrete, unambiguous, and directly linked to this lawsuit than the three classic forms of implied waiver." *Id.* at 18. But "[c]ourts have been reluctant to stray beyond [the three recognized] examples [of implied waiver] when considering claims that a nation has implicitly waived its defense of sovereign immunity." *Luxexpress 2016 Corp. v. Gov't of Ukraine*, No. 18-cv-812, 2020 WL 1308357, at *8 (D.D.C. Mar. 19, 2020), *aff'd sub nom. Ivanenko v. Yanukovich*, 995 F.3d 232 (D.C. Cir. 2021) (quoting *Princz*, 26 F.3d at 1174). Moreover, "courts rarely find that a nation has waived its sovereign immunity . . . without strong evidence that this is what the foreign state intended." *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 444 (D.C. Cir. 1990) (citation omitted). For the reasons explained above, the Court cannot conclude that South Sudan intended to waive its sovereign immunity and will accordingly decline to stray from the established forms of implied waiver in this case.

Absent such waiver or any other applicable exception under the FSIA, the Court lacks subject matter jurisdiction over this case.  Without subject matter jurisdiction, the Court also does not have personal jurisdiction here.  Having concluded that Defendants did not waive their sovereign immunity to suit and that the Court thereby lacks subject matter and personal jurisdiction over this case, the Court must dismiss this case and does not reach the parties' remaining arguments.

## V.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 3, 2023                                               RUDOLPH CONTRERAS
                                                                                    United States District Judge